# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

CHRISTIAN XAVIER HARRIS,⁣ )
⁣ )
⁣ Petitioner, )
⁣ )
v. ⁣ ) ⁣ Case No. CIV-19-530-J
⁣ )
JAMES YATES, Warden, ⁣ )
Davis Correctional Facility, ⁣ )
⁣ )
⁣ Respondent. )

## ORDER

Petitioner, Christian Xavier Harris, appearing pro se, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Pet.) [Doc. No. 1] challenging his state court conviction in Case No. CF-2016-2650, District Court of Oklahoma County. Respondent filed a Response (Resp.) [Doc. No. 15] and the State Court Records, [Doc. No. 16],[1] and Petitioner did not reply. For the reasons set forth below the Court DENIES the Petition.

## I. Background

On March 18, 2016, Carlos Santos, Jessey Gonzalez, and Nicolas Gedela were sitting in a BMW waiting to sell marijuana to three other individuals. Trial Tr. Vol. II at 189, 191-92, 194-95, 200-201. Petitioner and two others arrived in another car and Petitioner approached the BMW

---

[1] The state records include the Original Record, (Or.), a supplemental Original Record (Suppl. Or.), a second supplemental Original Record (2nd Suppl. Or.), jury trial Exhibits (State's Ex., Def.'s Ex., Trial Crt.'s Ex.), a preliminary hearing transcript from October 12, 2016 (Prelim. Hr'g Tr.), a motion hearing transcript from February 24, 2017 (Mot. Hr'g Tr.), trial transcripts from February 27 to March 2, 2017 (Trial Tr.), a formal sentencing transcript from March 27, 2017 (Sentencing Hr'g Tr.), and an evidentiary hearing transcript from November 30, 2017 (Evid. Hr'g Tr.).

Citations to the parties' briefs and attachments will refer to this Court's CM/ECF pagination, while citations to the State Court Records refer to the original pagination.

and sat in the back seat on the driver's side. *Id.* at 191-92, 201-202. Petitioner discussed the marijuana sale, returned to his vehicle, and came back to the BMW with a companion. *Id.* at 205-06. The third individual remained in the other car. *Id.* at 206. Petitioner sat down in the back seat of the BMW, his body halfway out of the car, and his companion approached the driver's window to inspect the marijuana. *Id.* at 206-207. The companion then grabbed the marijuana from Mr. Gonzalez's hand and ran back to the other vehicle. *Id.* at 207-209. When Mr. Gonzalez gave chase, Petitioner ran to the rear of the car and fired two shots. *Id.* at 209-210. Mr. Santos, who had been sitting in the back seat of the BMW, died from a gunshot wound to the head. *Id.* at 195, 215.

Police recovered Mr. Gonzalez's phone and discovered communications with a phone number associated with a phone registered to Petitioner. Trial Tr. Vol. IV at 59-60. Detectives used phone records and location data to track Petitioner's movements and identify friends and family members. *Id.* at 60-71. Using that data, detectives determined Petitioner visited Gun World on the day after the murder. *Id.* at 69. Detectives interviewed a Gun World employee, Christina Scroggins, and showed her two photos – one of Petitioner and one of his brother. *Id.* at 90-93. Ms. Scroggins recognized both men and told police she believed they had been in the store on March 19, 2016 and that Petitioner had purchased a .40 caliber magazine the day after the murder. *Id.* at 92; Vol. III at 144-45, 147-48.

During that same period, detectives also showed Mr. Gedela two photo arrays. The first array contained six photos, including one depicting Petitioner. Trial Tr. Vol. I at 5; Def.'s Ex. 1. Mr. Gedela failed to identify anyone in that array. Trial Tr. Vol. I at 5-6; Vol. II at 220. Detectives showed Mr. Gedela another photo array a week later. Prelim. Hr'g Tr. at 68. This array included one clear picture of Petitioner, one picture of another individual, a collection of three photos of yet

another person, and four images taken from a surveillance video at Gun World. Mot. Hr'g Tr. at 6-7; Ct.'s Ex. 1. After viewing this photo array, Mr. Gedela identified Petitioner as the person who sat with Mr. Santos in the back seat and fired the fatal shots. Prelim. Hr'g Tr. at 76-77; Trial Tr. Vol. II at 223-24. Mr. Gedela repeated that identification during Petitioner's trial. Trial Tr. Vol. II at 191-224. Petitioner's sister testified that in the days following the shooting, Petitioner told her he had "fucked up" and shot someone, *id.*, Vol. III at 104, and Petitioner's former girlfriend testified that he admitted to being present during the crime and asked her to say she was with him on the night of the murder. *Id.* at 183, 190, 192-93. Crime scene investigators testified that the murder weapon was a .40 caliber handgun and that they recovered a magazine to a .40 caliber handgun at the scene of the crime. *Id.*, Vol. II at 233; Vol. III at 91.

Petitioner was charged with first degree murder and conspiracy to commit robbery. The jury convicted Petitioner on both counts and the court sentenced him to life in prison on the murder charge and a $5,000 fine on the conspiracy charge. Or. Vol. II at 222-24; Sentencing Hr'g Tr. at 7. Petitioner appealed to the Oklahoma Court of Criminal Appeals (OCCA), *see* Brief of Appellant [Doc. No. 15, Ex. 1], and the appellate court affirmed. *See* OCCA Summary Opinion (OCCA Summ. Op.) [Doc. No. 15, Ex. 5]. Petitioner timely filed his federal habeas petition.

## II.    **Grounds for Habeas Relief**

Petitioner raises nine grounds for relief. In lieu of his own description, he attaches pages from his state court appellate brief. Those claims include:

- Ground One:  Alleged Discriminatory Use of Peremptory Challenges

- Ground Two:  Alleged Improper Comments Regarding Jury Deliberation

- Ground Three:  Failure to Suppress In-Court Identification

- Ground Four:  Alleged Lack of Notice Regarding In-Court Identification

- Ground Five:  Failure to Declare a Mistrial

- Ground Six:  Alleged Insufficient Evidence to Support Conviction

- Ground Seven:  Alleged Improper Omission of Jury Instructions

- Ground Eight:  Alleged Prosecutorial Misconduct

- Ground Nine:  Alleged Ineffective Assistance of Counsel (Subsections A-H)

*See* Pet. at 5-54.

## III.   **Standard of Review**

When the OCCA adjudicates a petitioner's constitutional claims on their merits,[2] they are

governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA).  *See Burt v. Titlow*, 571 U.S. 12, 16 (2013) ("[AEDPA] erects a formidable barrier to

federal habeas relief for prisoners whose claims have been adjudicated in state court.").  Pursuant

to the AEDPA, this Court may grant habeas relief only if the state court's adjudication "resulted

---

[2] In deciding whether a federal constitutional claim was raised in the appellate court, the Court looks "to the 'substance' of claims made on direct appeal; if any of the claims can be said to 'fairly present[ ],' expressly or by clear implication, a federal constitutional claim then exhaustion requirements have been satisfied as to those claims."  *Pena v. Hartley*, 576 F. App'x 749, 752 (10th Cir. 2014) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 278 (1971)) (holding petitioner sufficiently raised federal constitutional claims in his state court appeal despite not making significant reference to state federal law).  When a petitioner sufficiently raises a federal constitutional claim in his OCCA appeal, this Court presumes the OCCA adjudicated the claim on its merits even in the absence of any direct reference to the federal constitution.  *See Johnson v. Williams*, 568 U.S. 289, 301 (2013); *see also Williams v. Trammell*, 782 F.3d 1184, 1999 (10th Cir. 2015) (holding the OCCA's "silence" on the specifics of an underlying federal claim "does not change [the court's] deference" and reiterating the court's role is "still to evaluate the reasonableness of the OCCA's application of [federal law], considering the reasonableness of the theories that 'could have supported' the OCCA's decision." (quotation omitted)).  Notably, the Tenth Circuit recently deviated from this practice in *Weimer v. Allbaugh*, 766 F. App'x 728, 731-32 (10th Cir. 2019).  There, the appellant alleged the evidence rendered his trial fundamentally unfair but the OCCA only analyzed the claim under state law.  *See id.* at 731.  The Tenth Circuit held the opinion was limited to only a state law claim and did not apply deference.  *See id.* at 732.  But *Weimer* is unpublished and not binding; accordingly, this Court presumes Petitioner raised federal claims and applies deference accordingly, unless otherwise noted.

in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1), (2). "It is the petitioner's burden to make this showing and it is a burden intentionally designed to be 'difficult to meet.'" *Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015) (citation omitted). This standard "reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Woods v. Etherton*, 136 S. Ct. 1149, 1151, (2016) (internal quotation marks and citation omitted). "The state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (internal quotation marks and citation omitted).

A state-court decision is contrary to clearly established federal law under 28 U.S.C. § 2254(d)(1) if it "'applies a rule that contradicts the governing law set forth in Supreme Court cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that precedent.'" *Fairchild v. Trammell*, 784 F.3d 702, 711 (10th Cir. 2015) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06, (2000)). "A state-court decision is an 'unreasonable application' of Supreme Court precedent if the decision 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 407-08).

5

"Review of a state court's factual findings under § 2254(d)(2) is similarly narrow." *Smith v. Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016). Courts must "presume the factual findings of the [state court] are correct absent clear and convincing evidence to the contrary." *Harmon v. Sharp*, 936 F.3d 1044, 1050 (10th Cir. 2019). To that end, factual findings will not be unreasonable merely because on habeas review the court "would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015) (citation omitted). Instead, the Court must defer to the state court's factual determinations so long as "reasonable minds reviewing the record might disagree about the finding in question." *Id.* (citation omitted).

"For federal habeas claims not adjudicated on the merits in state-court proceedings, we exercise our 'independent judgment[.]'" *Littlejohn v. Trammell*, 704 F.3d 817, 825 (10th Cir. 2013) (citation omitted). In such a situation, a petitioner must show a constitutional violation by a preponderance of the evidence. *See Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964); *see also Sa'Ra v. Raemisch*, 536 F. App'x 783, 787-88 (10th Cir. 2013) ("Our independent judgment is affected by allocation of the underlying burden of persuasion. That burden falls on the Petitioner, who must show a constitutional violation by a preponderance of the evidence.").

## IV.  Analysis

### A.  Ground One – Alleged Discriminatory Use of Peremptory Challenges

During voir dire, the prosecution used two peremptory challenges to remove jurors JW and ABM. Trial Tr. Vol. II at 122, 125. Petitioner objected and argued that the prosecution had removed the two jurors because they, like Petitioner, were black. *Id.* at 122-23, 125. The prosecution explained that they excluded JW because of his criminal background and ABM because she had family with criminal backgrounds and because she expressed some frustration with the legal system. *Id.* The trial court overruled the objection finding no discriminatory intent

in the peremptory challenges.  *Id*.  On appeal, Petitioner argued the peremptory challenges violated the federal Equal Protection Clause.  *See* Brief of Appellant at 15-26.  Specifically, Petitioner argued the prosecutor's reasons were not facially race-neutral because (1) relying on past criminal history has a disparate impact on blacks and (2) the prosecutor did not strike white jurors who also reported criminal backgrounds.  *See id.* at 18-26.  The OCCA denied relief, holding that "[o]n its face, the record here does not reflect discriminatory intent."  OCCA Summ. Op. at 4.

### 1.    Clearly Established Law

It is clearly established that States violate the Equal Protection Clause when they intentionally exclude jurors of a certain race because they are the same race as the defendant.  *See Batson v. Kentucky*, 476 U.S. 79, 85 (1986) (citing *Strauder v. West Virginia*, 100 U.S. 303 (1880)).  Prosecutors therefore cannot use peremptory challenges to purposefully discriminate and exclude jurors based on race.  *Id*. at 88-89, 93.  However, no violation exists where prosecutors exclude a juror for race-neutral reasons.  *Id*. at 93.

To succeed on a claim that peremptory challenges were used in a discriminatory manner, a defendant must establish a prima facie case of purposeful discrimination.  *Id*. at 93-94.  That is,

> (1) the defendant must show he is a member of a cognizable racial group, and that the prosecution has exercised peremptory challenges to remove members of a particular race from the venire; (2) the defendant is entitled to rely on the fact that peremptory challenges are a jury selection practice which permits discrimination by those who wish to discriminate; and (3) the defendant must show that these facts and other relevant circumstances raise an inference that the prosecutor used that practice to exclude the venire members from the petit jury on account of their race.

*United States v. Esparsen*, 930 F.2d 1461, 1465 (10th Cir. 1991) (footnote omitted) (citing *Batson*, 476 U.S. at 96).  The prosecution must then offer a race-neutral explanation for the peremptory challenges.  *See Batson*, 476 U.S. at 97.  At that point, the "trial court must determine whether the defendant has carried his burden of proving purposeful discrimination."  *Id*. at 98.

## 2.    Analysis

Here, the prosecution offered facially race-neutral reasons for removing JW and ABM; therefore, the relevant question is whether the OCCA reasonably found that Petitioner failed to prove purposeful discrimination. *See Hernandez v. New York*, 500 U.S. 352, 359 (1991) (if the prosecution offers a race-neutral reason for exclusion and the trial court rules on the ultimate issue of purposeful discrimination, the issue of whether the petitioner established a prima facie case is moot).  The Court finds it did.

For example, the OCCA rejected Petitioner's disparate impact argument because "disparate impact may be a factor in determining intent, but is not itself conclusive as to discriminatory intent."  OCCA Summ. Op. at 4 (citing *Hernandez*, 500 U.S. at 362).  This was a reasonable application of Supreme Court law.  *See Hernandez*, 500 U.S. at 362; *see also, e.g., United States v. Johnson*, 941 F.2d 1102, 1108 (10th Cir. 1991) ("In evaluating the race-neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause *as a matter of law*. . . .  Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.  Moreover, the disparate impact of a prosecutor's actions cannot, standing alone, establish an equal protection violation." (citations omitted; emphasis in original)).

On Petitioner's comparative-juror argument,[3] the OCCA made a factual determination that the record did not prove discriminatory intent because it did not identify the races of each

---

[3] The Supreme Court has held that "[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack [panelist] who is permitted to serve, that is evidence tending to prove purposeful discrimination . . . ." *Miller-El v. Dretke*, 545 U.S. 231, 241 (2005).

prospective juror who was challenged or not challenged based on a past criminal record. *See* OCCA Summ. Op. at 5-6.[4] "[This Court] can grant . . . relief only if the state court's rejection of [petitioner's *Batson*] claim was "'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Black v. Workman*, 682 F.3d 880, 896 (10th Cir. 2012) (statutory citation omitted; citing *Rice v. Collins*, 546 U.S. 333, 338 (2006)). And as noted above, "'[s]tate-court factual findings . . . are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" *Id.* (citations omitted). Petitioner has presented no evidence, much less clear and convincing evidence, to call the OCCA's factual determination into question. Accordingly, the OCCA reasonably concluded Petitioner did not meet his burden of proving purposeful discrimination. *See, e.g., Howell v. Trammell*, 728 F.3d 1202, 1226-27 (10th Cir. 2013) (holding the state court did not unreasonably reject petitioner's *Batson* claim where petitioner failed to carry his burden of proving purposeful discrimination where the record was silent as to the relevant juror's race); *see also Battle v. Workman*, 353 F. App'x 105, 109 (10th Cir. 2009) (finding no potential basis for a *Batson* claim when nothing in the record reflects the racial composition of the jury or jury pool).

In sum, the Court finds the OCCA's denial of Petitioner's equal protection claim was reasonable and denies relief on Ground One.

---

[4] Petitioner did make a record regarding juror EB, who was white and was not stricken despite a criminal history. Trial Tr. Vol. II at 138-39. The OCCA acknowledged that Petitioner had made a "record that one of the five [jurors] was Caucasian" but did not engage in a comparative-juror analysis regarding EB. OCCA Summ. Op. at 5-6. Even if this Court reviewed the issue de novo, however, it would find no compelling evidence of purposeful discrimination. That is, at best, Petitioner can show only that both JW and EB had criminal records. The evidence of discrimination beyond that similarity is weak. Juror EB had two DUI arrests, but also had a cousin who was an Oklahoma County sheriff's deputy, a connection the prosecution might have viewed favorably. Trial Tr. Vol. I at 82. By contrast, JW's only law enforcement connection was a friend that was a police officer in Midwest City, Oklahoma. *Id.* at 70.

**B.       Ground Two – Alleged Improper Comments Regarding Jury Deliberation**

According to Petitioner, the trial judge made improper comments before deliberations began that implied the jury should render a swift and unanimous decision.  *See* Pet. at 18-23.  First, the judge emphasized to the jury that they could not leave the jury room until their deliberations ended.  *See id.* at 18-19.  Second, the judge told the jury not to request food if there was a chance that they could reach a verdict before the food arrived.  *See id.* at 19.  Third, the judge cautioned the jurors that they may have difficulty with parking if deliberations lasted into the night.  *See id*. at 19-20.  Petitioner challenged these comments on direct appeal but aside from mentioning the term "fair trial" did so exclusively under state law theories.  *See* Brief of Appellant at 27-32 (making no reference to the federal constitution or any argument which, "expressly or by clear implication" referenced federal law; *supra* n. 2).  The OCCA reviewed the comments for plain error and found they were not improper.  *See* OCCA Summ. Op. at 6-7.

Petitioner offered the identical argument in his habeas Petition, *see* Pet. at 18-23, and the Court therefore denies Ground Two as raising only state law issues.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").  Alternatively, assuming the Petition could be liberally construed as raising a federal constitutional claim, the Court denies Petitioner's argument on independent review.[5]

---

[5] As Respondent argues, an unexhausted federal constitutional claim may be denied on its merits. *See* Resp. at 24; *May v. Heimgartner*, __ F. App'x __, 2019 WL 6358286, at *4 (10th Cir. Nov. 27, 2019) (reiterating that "a petition 'may be denied on the merits' in its entirety, notwithstanding the failure to exhaust" (citation omitted)).

The Court's review of jury instructions – if they do not implicate a specific constitutional right – is limited to the question of whether the trial, viewed in context of the entire proceeding, ran afoul of fundamental fairness and due process. *See Spears v. Mullin*, 343 F.3d 1215, 1244 (10th Cir. 2003). "In the specific context of a trial court giving a faulty instruction, the courts are not to ask if the instruction is 'undesirable, erroneous, or even universally condemned,' but whether it, by itself, 'so infected the entire trial that the resulting conviction violates due process.'" *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *see also Turrentine v. Mullin*, 390 F.3d 1181, 1191 (10th Cir. 2004).

While federal courts cannot weigh in on the correctness of the trial court's instructions, they typically do examine relevant state law in assessing whether an instruction rendered the trial fundamentally unfair. *See Jackson v. Mullin*, 46 F. App'x 605, 609 (10th Cir. 2002); *see also Spears*, 343 F.3d at 1244-45 (analyzing Oklahoma law in determining whether certain instructions rendered petitioner's trial fundamentally unfair). Here, Petitioner does not establish any specific error in the instructions but rather argues that the jury is not required to return a verdict and that the sequestration rule can be waived. While true, those points amount only to additional information that the judge did not convey. The judge's actual comments were accurate, as the default rule in Oklahoma is that the jury is to be sequestered until they reach a verdict or are ordered to return by the court. *See* Okla. Stat. tit. 22, § 857.

Nor were the comments coercive. While the judge certainly warned jurors to be diligent in arranging their parking to accommodate their service and encouraged the jury not to order food if a verdict was imminent, the judge also reiterated that there was no time limit on their deliberations. *See* Trial Tr. Vol. III at 224; Vol. IV at 139-40.

Finally, the prosecution presented significant evidence of Petitioner's guilt, including an eyewitness to the crime, cell phone data indicating Petitioner's presence at the scene, and testimony that Petitioner admitted to shooting someone. *See supra* at 1-3. Considering the overwhelming evidence of guilt and the trial court's instruction that the jury should take as long as it needed, the Court cannot say the judge's comments rendered Petitioner's trial fundamentally unfair. *See Valdez v. Bravo*, 244 F. App'x 864, 870 (10th Cir. 2007) (consistency between the verdict and the strength of the evidence supports a finding that an erroneous instruction did not render the trial unfair).

On these alternative grounds, the Court denies relief on Ground Two.

### C. Ground Three – Failure to Suppress In-Court Identification

Nicholas Gedela identified Petitioner during the preliminary hearing and at trial as being involved in the drug deal and firing the shots that killed Carlos Santos. Prelim. Hr'g Tr. at 39-40, 48; Trial Tr. Vol. II at 191-224. Petitioner unsuccessfully sought to suppress Mr. Gedela's identification, arguing that it was tainted by the photo arrays detectives showed Mr. Gedela. Or. Vol. I. at 125-27; Mot. Hr'g Tr. at 13; Trial Tr. Vol. I at 5-6. Petitioner also argued Mr. Gedela's testimony was unreliable because the drug deal occurred after dark, Mr. Gedela had been smoking marijuana, he had never seen Petitioner before, he was seated in the front seat while Petitioner was in the back, and he only viewed Petitioner for a limited time. Or. Vol. I at 125-27. On appeal, Petitioner alleged the in-court identification "violated Due Process and should have been suppressed." Brief of Appellant at 35. The OCCA disagreed, reviewing for plain error and finding the photo array process was not suggestive or unnecessary and that the in-court identification was reliable. *See* OCCA Summ. Op. at 7-8.

### 1.      Clearly Established Law

In-court identifications can violate the Due Process Clause if authorities use an identification procedure that is both suggestive and unnecessary. *See Perry v. New Hampshire*, 565 U.S. 228, 238-39 (2012). But even a suggestive and unnecessary identification procedure does not automatically require suppression. *See id.* at 239. Rather, courts must assess on a case-by-case basis whether "improper police conduct created a 'substantial likelihood of misidentification.'" *Id.* (quoting *Neil v. Biggers*, 409 U.S. 188, 201 (1972)). "'[R]eliability [of the eyewitness identification] is the linchpin' of that evaluation." *Id.* (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)). When a procedure is suggestive and unnecessary, courts weigh that corruptive influence against "'indicators of [a witness'] ability to make an accurate identification.'" *Id.* (quoting *Brathwaite*, 432 U.S. at 114). Indicators include "'the opportunity of the witness to view the criminal at the time of the crime, the witness'[s] degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.'" *Id.* at n.5 (quoting *Brathwaite*, 432 U.S. at 114).

### 2.      Analysis

The OCCA's denial of relief on this claim was reasonable.[6] Regarding the photo array procedure, Petitioner's only arguments are that Mr. Gedela failed to select Petitioner's photo

---

[6] As discussed, the OCCA applied a "plain error" standard to this claim. Notably, "Oklahoma's formulation of the plain-error standard is virtually identical to the constitutional test for due process." *Hancock v. Trammell*, 798 F.3d 1002, 1011 (10th Cir. 2015). So, when the OCCA "rejected [Petitioner's] claim under the plain-error standard, the decision effectively disallowed the possibility of a due process violation." *Id.* This Court must then defer to the OCCA's ruling unless it "'unreasonably applied'" the due process test. *Thornburg v. Mullin*, 422 F.3d 1113, 1125 (10th Cir. 2005) (internal brackets and citation omitted); *see also Eizember v. Trammell*, 803 F.3d 1129, 1138 n.1 (10th Cir. 2015) (holding the court would apply deference to the OCCA's plain error analysis).

during an initial line-up and that the second line-up contained more pictures of Petitioner than other individuals. Neither argument is persuasive. First, that Mr. Gedela failed to select Petitioner's photo out of an earlier array does not mean that the process was corrupted. *See English v. Cody*, 241 F.3d 1279, 1283 (10th Cir. 2001) (use of a petitioner's photo in a second lineup after a witness chose the wrong picture in an initial lineup is not unnecessarily suggestive). Second, the inclusion of more than one picture of Petitioner did not render the second photo array unnecessarily suggestive. While the Supreme Court has cautioned that recurring photographs of a defendant in a photo array can increase the danger of a misidentification, *see Simmons v. United States*, 390 U.S. 377, 383 (1968), it is not per se unnecessarily suggestive. *See Gregory-Bey v. Hanks*, 332 F.3d 1036, 1045 (7th Cir. 2003) (showing multiple photos of a defendant in multiple photo arrays was not unduly suggestive); *Diggs v. Spitzer*, No. 06-CV-584S, 2007 WL 3036862, at *8 (W.D.N.Y. Oct. 16, 2007) (using two photos of a defendant in the same array is not unnecessarily suggestive); *Flynn v. Pennsylvania Dep't of Corrections*, No. 91-7888, 1992 WL 50110, at *3-4 (E.D. Pa. Mar. 2, 1992) (array showing two photographs of the defendant was not unduly or impermissibly suggestive). The pertinent question is whether the photos of Petitioner were emphasized in some way. *See Simmons*, 390 U.S. at 3838.

The record establishes that Petitioner's photos were not emphasized. Although the second photo array contained more than one photo of Petitioner, only two passably depict Petitioner's face, and only one clearly depicts his face. Trial Crt.'s Ex 1. So, Mr. Gedela viewed eight photographs (three grouped together) depicting five different individuals, and only one clearly showed Petitioner's face. Based on those facts and the state of clearly established law on this issue, the OCCA was not unreasonable in finding the array was not unnecessarily suggestive.

Finally, Mr. Gedela had ample opportunity to observe Petitioner and testified that he was watching Petitioner during the drug deal. Trial Tr. Vol. II at 191-92, 201-202. Mr. Gedela sat in the front passenger seat of the car where the deal was being negotiated, looked back at Petitioner, and watched Petitioner when he returned to the car. *Id*. at 201-202, 206-07. Considering the factors set out by the Supreme Court, *see Brathwaite*, 432 U.S. at 114, the OCCA reasonably found Mr. Gedela's testimony reliable.[7]

### D. Grounds Four and Five – Alleged Lack of Notice Regarding In-Court Identification and Failure to Declare a Mistrial

As discussed above, Ms. Scroggins testified that Petitioner came into Gun World and purchased a .40 caliber[8] magazine. *See supra* at 2. According to the witness, police showed her two photos of Petitioner and his brother and a six-photo array that included Petitioner's photo. Trial Tr. Vol. III at 150-53. Defense counsel moved for a mistrial on the basis that they had not received any notice that Ms. Scroggins was shown a six-photo array. The trial court held an in-camera hearing in which detectives testified that they had not shown Ms. Scroggins any such array but had only shown her two pictures of Petitioner and his brother. *Id*. at 166-68, 174-75, 178. Notably, the fact that detectives had shown Ms. Scroggins the two photos was detailed in the police reports defense counsel received before trial. *Id*. at 158-59. Petitioner's counsel again sought a mistrial, alleging that Ms. Scroggins perjured herself. The trial court denied the motion as well as Petitioner's request that the jury be instructed to disregard Ms. Scroggins' testimony. *Id*. at 180-

---

[7] As for Petitioner's argument that Mr. Gedela had smoked marijuana, the record shows that he shared a joint of marijuana with three others approximately an hour prior to meeting Petitioner. Trial Tr. Vol. II at 190, 231. Petitioner provides no evidence to suggest Mr. Gedela was so impaired that his identification was unreliable.

[8] Ms. Scroggins initially testified Petitioner purchased a .9 mm magazine but corrected her testimony after further questioning. Trial Tr. Vol. III at 144-45.

81. On appeal, Petitioner claimed the lack of notice and the trial judge's subsequent failure to declare a mistrial violated his due process rights and denied him a fundamentally fair trial. *See* Brief of Appellant at 35-41. The OCCA denied both claims. *See* OCCA Summ. Op. at 8-10.

### 1. Clearly Established Law

Petitioner's argument implicates the trial court's evidentiary rulings. Such rulings generally only involve questions of state law and are not cognizable in federal habeas actions. *See Estelle*, 502 U.S. at 67. So, "[i]n a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" *Maes v. Thomas*, 46 F.3d 979, 987 (10th Cir. 1995) (quoting *Tapia v. Tansy*, 926 F.2d 1554, 1557 (10th Cir. 1991)).

### 2. Analysis

The OCCA's holding on these issues was reasonable. That is, Petitioner knew from the police report that detectives showed Ms. Scroggins photographs of he and his brother and that she recognized them as being present in Gun World on March 19th. *See supra* at 15. Additionally, Ms. Scroggins' identification had little impact. That is, defense counsel thoroughly discredited Ms. Scroggins' testimony, Trial Tr. Vol. III at 220-22; Vol. IV at 81-82, 91-94, and the prosecution relied on cell phone data and surveillance video – not Ms. Scroggins' testimony – to establish Petitioner's presence at Gun World. *Id.*, Vol. IV at 108, 138. Finally, Petitioner's presence at Gun World was simply one piece of circumstantial evidence added to the overwhelming evidence of guilt. *See supra* at 1-3. Accordingly, the Court finds the OCCA reasonably concluded that neither the alleged lack of notice nor the trial judge's subsequent failure to declare a mistrial violated Petitioner's due process rights.

**E.      Ground Six – Alleged Insufficient Evidence to Support Conviction**

Petitioner's felony murder conviction is premised on the theory that he shot Mr. Santos while committing a robbery (involving the taking of the marijuana). Or. Vol. I at 35. On appeal, Petitioner challenged the sufficiency of the evidence claiming that the incident did not amount to robbery under Oklahoma law. *See* Brief of Appellant at 41-44. The OCCA disagreed, finding the record demonstrated that Petitioner fired the fatal shots when "one of the victims tried to stop him from completing the robbery," so the use of force was employed to "prevent anyone from recovering the property he and his confederate were stealing." OCCA Summ. Op. at 11.

**1.      Clearly Established Law**

To determine whether evidence is sufficient to support a criminal conviction, courts ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. On habeas review, this is a mixed question of law and fact, governed by 28 U.S.C § 2254(d)(1) and (d)(2). *See Maynard v. Boone*, 468 F.3d 665, 673 (10th Cir. 2006). This Court must therefore presume that the OCCA's factual determinations are correct, unless the petitioner rebuts that presumption by clear and convincing evidence, and then may not grant habeas relief unless the OCCA's decision is objectively unreasonable. *See Parker v. Matthews*, 567 U.S. 37, 43 (2012). The Supreme Court has described this standard as "twice-deferential." *Id*.

**2.      Analysis**

Petitioner's claim fails under this twice-deferential standard. In Oklahoma, robbery requires that force or fear be "employed either to obtain or retain possession of the property, or to prevent or overcome resistance to the taking." Okla. Stat. tit. 21, § 792. According to Petitioner, grabbing the marijuana did not constitute "force," and shots were not fired to obtain or retain the

marijuana but to facilitate Petitioner and his companions' escape. Pet. at 36. But regardless of whether taking the marijuana involved force,[9] Petitioner's firing of the gun certainly did. And while Petitioner appears to argue that he fired the shots to facilitate an escape rather than retain the property, the evidence presented at trial supports a reasonable conclusion that he fired to accomplish the latter. That is, after Petitioner's companion grabbed the marijuana and ran towards his car, Mr. Gonzalez started to pursue him. Trial Tr. Vol. II at 208-10. At that point, Petitioner fired the gun. *Id*. Based on this, a rational trier of fact could find, beyond a reasonable doubt, that Petitioner used the gun to retain the property or overcome resistance to its taking. Accordingly, the OCCA's decision was a reasonable application of *Jackson* and relief is denied on Ground Six.

### F.     Ground Seven – Alleged Improper Omission of Jury Instructions

The trial court denied Petitioner's request for a jury instruction involving eyewitness testimony. Suppl. Or. at 34. Counsel did not request – and the trial court did not give – an instruction regarding impeached testimony. *See* Trial Tr., *passim*; *see also* OCCA Summ. Op. at 12. On appeal, Petitioner argued that the trial court should have given an impeachment instruction regarding Ms. Scroggins' testimony and an eyewitness testimony instruction regarding both Mr. Gedela and Ms. Scroggins. *See* Brief of Appellant at 44-49. The OCCA rejected the arguments, finding first that although the trial court should have given the impeachment instruction, the mistake did not rise to the level of plain error because Petitioner's counsel thoroughly cross-examined Ms. Scroggins, demonstrated the inconsistencies through other testimony, explained in closing arguments that her testimony was unreliable, and her testimony was not essential to the prosecution's case. *See* OCCA Summ. Op. at 12. The OCCA next found that the eyewitness

---

[9] The OCCA did not address Petitioner's contention that the taking of the marijuana constituted force, nor does this Court.

instruction was not warranted since Mr. Gedela's identification was reliable and Ms. Scroggins was not an eyewitness to the actual crime. *See id.* at 12-15.

### 1. Clearly Established Law

"A state conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial." *Maes*, 46 F.3d at 984. The issue is "not whether the instruction is undesirable, erroneous, or even universally condemned, but whether the instruction so infected the trial that the resulting conviction violates due process." *Id.* (internal quotation marks omitted); *see also Robison v. Ward*, 232 F. App'x 785, 789 (10th Cir. 2007). In the specific context of a trial court refusing to give a certain instruction, a petitioner's burden is "especially great because [a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999) (quoting *Maes*, 46 F.3d at 984 (internal quotation marks omitted)).

### 2. Analysis

The OCCA's finding that the omission of the impeachment instruction had minimal impact on Petitioner's trial was reasonable. Ms. Scroggins' testimony was entirely circumstantial, and the prosecution avoided mentioning her testimony in closing arguments. Trial Tr. Vol. IV at 105-22, 132-39. Further, defense counsel undermined her testimony on multiple points. *Id.*, Vol. III at 151-55. And, when reviewed in context of the other overwhelming evidence of guilt, *see supra* at 1-3, the trial court's failure to instruct the jury on how to assess her testimony did not render the trial fundamentally unfair.

The same analysis applies to the trial court's failure to give an eyewitness instruction regarding Ms. Scroggins' testimony. Assuming the instruction would even apply (the OCCA

found it did not under state law), the jury was fully equipped to assess Ms. Scroggins' credibility based on the foregoing.

As for the eyewitness instruction regarding Mr. Gedela's testimony, the OCCA's decision was also reasonable. The OCCA found that Mr. Gedela's identification was reliable based on his lack of hesitation in identifying Petitioner at trial, his ability to observe Petitioner in close quarters, and his previous identification from a photo array. *See* OCCA Summ. Op. at 13. That conclusion is consistent with Tenth Circuit authority addressing the necessity of eyewitness instructions in federal cases. *See United States v. McGuire*, 200 F.3d 668, 676-77 (10th Cir. 1999) (unequivocal in-court identification, good opportunity to observe defendant, and prior identification from a photo line-up all support refusal to give eyewitness instruction). While Petitioner argues that Mr. Gedela's perception may have been impaired by the darkness or marijuana use, those unsupported allegations do not amount to clear and convincing evidence to refute the OCCA's factual findings or render the OCCA's substantive decision unreasonable. Relief is therefore denied on Ground Seven.

### G.  Ground Eight – Alleged Prosecutorial Misconduct

Near the end of defense counsel's closing argument, he told the jury he did not "want to at all cheat the tragedy that occurred in this case. I would only point out . . . that all parties involved understood that they were doing something dangerous. And they knew they were doing something risky." Trial Tr. Vol. IV at 132. The prosecutor then began his rebuttal by saying "there is really only one thing that I agree with what [defense counsel] said . . . and that is I beg you not to cheapen the events of March 18th, 2016." *Id.* He then went on to say,

> what we are talking about is a person's life. To take someone's life is the worst crime a person can commit and that is why it has the highest punishment ranges available under the law. So yes, I agree with [defense counsel] that I don't want you to cheapen the life of Carlos Santos. Just don't.

*Id*. at 133. Then, before he ended his argument, the prosecutor said once more "I agree with [defense counsel]. I beg you not to cheapen the life of Mr. Santos." *Id*. at 138-39.

Petitioner argued on appeal that the prosecutor's comments amounted to prosecutorial misconduct because they improperly implied that a verdict other than first-degree murder would cheapen the victim's life. *See* Brief of Appellant at 49-51. The OCCA agreed that those comments "improperly encouraged jurors to let sympathy for the victim enter into their deliberations." OCCA Summ. Op. at 14. However, the OCCA denied relief, finding that the improper argument did not rise to the level of plain error because Petitioner failed to show prejudice. *See id*. at 15.

### 1. Clearly Established Law

"Prosecutorial misconduct can result in constitutional error if it 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *DeRosa v. Workman*, 679 F.3d 1196, 1222 (10th Cir. 2012) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." *Bland v. Sirmons*, 459 F.3d 999, 1024 (10th Cir. 2006). This analysis considers the whole trial, and factors in the strength of the evidence, cautionary steps to counteract improper remarks, and defense counsel's failure to object. *See Le v. Miller*, 311 F.3d 1002, 1013 (10th Cir. 2002).

### 2. Analysis

The OCCA's denial of relief for lack of prejudice was reasonable based on the overwhelming strength of the evidence supporting first-degree felony murder. Prosecutors presented: (1) a reliable eyewitness who described Petitioner's role in the robbery and testified that he shot the victim; (2) testimony from Petitioner's sister he admitted to shooting someone; (3) testimony from a former girlfriend that he asked her to lie about his whereabouts on the night of

the murder; and (4) cell phone data showing Petitioner was near the scene of the crime at the time of the crime. *See supra* at 1-3. Considering the strength of the prosecution's case, the Court concludes that the OCCA reasonably found that the prosecutor's improper comments were not prejudicial and denies relief on Ground Eight.

**H.     Ground Nine – Alleged Ineffective Assistance of Counsel (Subsections A-H)**

Finally, Petitioner claims his trial counsel was constitutionally ineffective for failing to: (Subsection A) renew an objection to Mr. Gedela's in-court identification; (Subsection B) renew a request for an impeachment instruction regarding Ms. Scroggins; (Subsection C) preserve the record regarding the impeachment instruction; (Subsection D) object to prosecutorial misconduct; (Subsection E) file requested jury instructions into the record; (Subsection F) object to the trial court's comments about jury deliberation; and (Subsection G) object to hearsay. *See* Brief of Appellant at 52-56. Petitioner also alleges ineffectiveness based on his attorney's conceding guilt during closing arguments (Subsection H). *See id.* at 56-58.

The OCCA denied relief on all Petitioner's ineffectiveness claims. *See* OCCA Summ. Op. at 16-20.

**1.     Clearly Established Law**

To succeed on his claims, Petitioner must demonstrate that his trial counsel's performance was both deficient and prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 690-91 (1984). A court will only consider a performance "deficient" if it falls "outside the wide range of professionally competent assistance." *Id.* at 690. "[P]rejudice" involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the [trial] would have been different." *Id.* at 694. Notably, a court reviews an ineffective assistance of counsel claim from the perspective of counsel at the time he or she rendered the legal services, not in hindsight. *See id.* at 680.

"Surmounting *Strickland*'s high bar is never an easy task." *Harrington*, 562 U.S. 86, 105, (internal quotation marks and citation omitted). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult [as] [t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Id.* (internal quotations marks and citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### 2. Analysis

The Court finds the OCCA reasonably applied *Strickland* in denying Petitioner's claims on appeal.

### i. Failure to Renew an Objection (Subsection A)

Petitioner's counsel filed a pre-trial motion to suppress Mr. Gedela's identification of Petitioner, Or. Vol. I at 125-27, and after the trial court denied the motion, Mot. Hr'g. Tr. At 13, counsel did not renew the objection at trial. On appeal, Petitioner argued his attorney thus failed to preserve the issue for appellate review. *See* Brief of Appellant at 52. The OCCA reasonably found no prejudice because it had already found Mr. Gedela's in-court identification admissible. *See* OCCA Summ. Op. at 16. Petitioner provides no argument for how he might have succeeded on appeal with a different standard of review and the Court denies habeas relief on this issue.

### ii. Failures Involving the Jury Instructions (Subsections B, C, and E)

Petitioner argues that his counsel failed to: (Subsection B) renew his request for a jury instruction to disregard Ms. Scroggins' testimony; (Subsection C) preserve the record regarding an impeachment instruction for Ms. Scroggins; and, (Subsection E) properly file the jury instructions. *See* Pet. at 47-54. Petitioner raised the same claims on appeal and the OCCA rejected

each on the merits.  *See* OCCA Summ. Op. at 17-19.  The Court finds the OCCA's holdings reasonable.

### a.      Subsection B

Addressing Subsections B, the OCCA had already found that it "was not an abuse of discretion to leave the issue of [Ms. Scroggins'] credibility to the jury."  OCCA Summ. Op. at 10; *see also supra* at 15-16.  Thus, the appellate court reasonably found that trial counsel's failure to renew the meritless instruction request was not prejudicial.  *See United States v. Barrett*, 797 F.3d 1207, 1219 (10th Cir. 2015) ("Since Defendant's suggested instruction was not warranted under the law, his trial attorneys could not have been ineffective for failing to propose it.").

### b.      Subsections C & E

Counsel filed a packet of requested jury instructions before trial.  That packet included an instruction explaining how jurors should evaluate witnesses (i.e., Ms. Scroggins) who were impeached by prior inconsistent statements.  Or. Vol. II at 252.  But at the close of trial, counsel submitted a packet of instructions that did not include the impeachment instruction.  Suppl. Or. at 10-35; Evid. Hr'g Tr. at 5, 8-10.  The trial judge reviewed the latter packet and ruled on each instruction in writing.  Suppl. Or. at 10-35; Evid. Hr'g Tr. at 5, 8-10.  After the trial judge ruled on jury instructions, he directed defense counsel to file the instructions.  Evid. Hr'g Tr. at 6.  Defense counsel failed to do so.  *Id.*  When the error became apparent on appeal, the OCCA remanded the case to the trial court to resolve the issue and supplement the appellate record.  *See* OCCA Summ. Op. at 17.  The trial court then held an evidentiary hearing, where it concluded that (1) defense counsel did not file the instructions as directed, although counsel did have the original instructions that bore the trial judge's written rulings; (2) it had ruled on all submitted instructions; and, (3) it appeared counsel did not submit the impeachment instruction at the close of the trial.  Evid. Hr'g

24

Tr. at 6, 8-10.  In conclusion, the trial court instructed defense counsel to file the instructions.  *Id*. at 10-11.  Defense counsel did so, and the appellate record was supplemented with those instructions.  *See* OCCA Summ. Op. at 18.

Turning to Subsection C, the OCCA found that Petitioner suffered no prejudice from counsel's failure to include the impeachment instruction in the final jury instruction submission because, as discussed above, *see supra* 18-20, "the failure to instruct jurors on prior inconsistent statements did not constitute plain error."  OCCA Summ. Op. at 19.  That conclusion was reasonable.  As just discussed, a trial attorney's failure to request a meritless jury instruction cannot be prejudicial, *see supra* at 24, and Ms. Scroggins' testimony was not essential to the prosecution's case and the defense thoroughly undermined her credibility.  *See id.* at 15-16.

Finally, in Subsection E, Petitioner's claim that counsel failed to file the jury instructions does not warrant relief.  The OCCA found that "[Petitioner] cannot possibly show prejudice from counsel's original failure to file the instruction[s] . . ., because [they are] now part of the appellate record."  OCCA's Summ. Op. at 18.  That conclusion was clearly reasonable.

### iii.     Failure to Object to Prosecutorial Misconduct (Subsection D)

Petitioner next claims that defense counsel should have objected when the prosecutor asked the jury in closing arguments not to cheapen the victim's life.  *See* Pet. at 50.  The OCCA rejected this claim on appeal, finding that Petitioner had not shown any prejudice from the lack of objection.  OCCA Summ. Op. at 16.  That conclusion was again reasonable.  The OCCA found the prosecutor's comments did not render Petitioner's trial fundamentally unfair.  *See supra* at 20-22.  Considering the OCCA's resolution of that claim, the strength of the evidence against Petitioner, and the brevity of the comments, Petitioner has failed to establish that a contemporaneous objection would have led to a different outcome.

### iv. Failure to Object to the Trial Court's Comments About Jury Deliberation (Subsection F)

Petitioner next argues that defense counsel should have objected to the trial judge's comments about jury deliberations. *See* Pet. at 51-52. On appeal, the OCCA found no prejudicial effect, OCCA Summ. Op. at 16-17, and that decision was not unreasonable. As discussed above, the trial court's comments were not in error, they were not coercive, and they likely had no effect on the ultimate verdict considering the overwhelming evidence of guilt. *See supra* at 10-12. Therefore, even if counsel should have objected, Petitioner cannot show that an objection would have changed the outcome of his trial.

### v. Failure to Object to Hearsay (Subsection G)

At trial, prosecutors introduced text messages between Petitioner, Mr. Gonzalez, and Mr. Santos that purportedly showed the parties arranging the drug deal. Trial Tr. Vol. III at 205, 208-09, 214-18; State's Ex. 41. Petitioner argues that the text messages amount to hearsay and that defense counsel was ineffective for failing to object to their admission. *See* Pet. at 52. Applying the *Strickland* standard, the OCCA denied this claim for lack of prejudice. *See* OCCA Summ. Op. at 19. This decision was a reasonable application of federal law.[10] As noted several times already, Mr. Gedela identified Petitioner as being present during the drug deal. Consequently, there is no reasonable likelihood that the jury's verdict would have been different had the text messages been excluded.

---

[10] Respondent argues that defense counsel was not ineffective because the text messages were either not hearsay or fell within an exception to the hearsay rule. *See* Resp. at 84-86. The Court need not resolve that issue of state law because the OCCA's conclusion that Petitioner did not suffer prejudice was reasonable.

### vi.    Conceding Guilt During Closing Arguments (Subsection H)

Petitioner's final ineffectiveness claim is based on defense counsel's statement in closing argument that "the charge of murder in the second degree was a better fit for what you have heard throughout this trial." Trial Tr. Vol. IV at 131. Petitioner argues that counsel essentially conceded guilt without his consent. *See* Pet. at 52-54. The OCCA found that given the evidence at trial, counsel's strategic decision was reasonable, and that the record was silent on whether Petitioner did or did not approve of the strategy. *See* OCCA Summ. Op. at 19-20.

The OCCA's prong-one decision raises some concern. It is true that when a defendant "neither consents nor objects" to a concession of guilt, counsel is not "automatically barred from pursing that course." *Florida v. Nixon*, 543 U.S. 175, 178 (2004). But that principle only applies when defendant has been "informed by counsel" of the proposed strategy. *Id*. As the OCCA noted, the record is silent as to whether Petitioner was informed that counsel would concede guilt to second-degree murder. Regardless, this Court need not decide if the OCCA's decision as to deficiency was reasonable, because it is clear, even under de novo review,[11] that Petitioner did not suffer prejudice from counsel's concession. That is, Petitioner's guilt was established through eyewitness testimony, cell phone records, his own admissions, and numerous other pieces of circumstantial evidence. *See supra* at 1-3. Considering such overwhelming evidence, the Court finds no reasonable probability that the jury would have found Petitioner not guilty but for his attorney stating that second-degree murder was the more appropriate verdict.

---

[11] When a state court only addresses one prong of a multi-prong test, federal courts review the unaddressed prong or prongs de novo. *See Smith v. Sharp*, 935 F.3d 1064, 1072 (10th Cir. 2019).

### vii.     Summary

Based on the foregoing, the Court denies relief on Petitioner's ineffective assistance of trial counsel claim in Ground Nine.

## V.     <u>Conclusion</u>

For the reasons set forth, Petitioner's Petition is DENIED.  A separate judgment shall be entered.

ENTERED this 22nd day of January, 2020.

BERNARD M. JONES
UNITED STATES DISTRICT JUDGE